*W. E. Settle, for appellant.*

*P. W. Hardin, for appellee.*

---

C. F. WING v. COMMONWEALTH.

[Abstract Kentucky Law Reporter, Vol. 7—227.]

**Absence of Witness Cause for Continuance.**

An application for a continuance of a criminal trial on account of the absence of a witness should be denied when it fails to show a reasonable probability that the attendance of such witness can be secured if the cause be continued, and the mere statement in the application that the witness has promised to attend

is not a sufficient showing of even a probability that such attendance could be had.

**Harmful Error Required for Reversal.**

Where in a trial of one charged with murder the court gives an erroneous instruction as to malice, such instruction does not harm the accused where the jury only convicts him of manslaughter.

APPEAL FROM CALDWELL CIRCUIT COURT.

September 12, 1885.

OPINION BY JUDGE HOLT:

The appellant, Charles F. Wing, seeks to reverse a conviction for manslaughter for the killing of W. R. Conger, who was a policeman of the town of Princeton. None of the reasons urged by his counsel can prevail. A continuance was asked by reason of the absence of John Neal, who was then a resident of Illinois, and not subject to or within reach of the process of the lower court. He was not a witness upon a former trial of the case, and his absence was one of the grounds upon which a continuance was asked and granted at the previous term of the court. The case had already been continued for the defendant at three terms; and at another he had asked it, but it was refused; and a trial then had resulted in the jury failing to agree. Neal removed from this state a day or so after the killing, and had never returned, and after the repeated continuances that had been granted to the defendant, one of which was based at least in part upon Neal's absence, the mere statement in the defendant's affidavit that the witness had promised to be present at that term of the court was not a sufficient showing of even a probability that his attendance could thereafter be compelled or procured.

Following what is almost a common fault in the trial courts many instructions were given, but one of them seems to be seriously objected to by the appellant. It improperly grouped together certain isolated facts of the case, and told the jury that the law inferred malice therefrom; but this, like the complaint of the appellant, that no instruction was given upon the subject of drunkenness can not avail him because the jury found that there was no malice and only convicted him of manslaughter.

The instructions marked "D" and "3" asked by the defendant were properly rejected. The law of the case had already been given to the jury in abundance. The first one would have been misleading because by it they would have been told, that an officer is not authorized to make an arrest for a breach of the peace or disorderly conduct unless he has a warrant or witnesses it; this leaving out of view his duty to do so for mere drunkenness as provided in section 394 of the Criminal Code. The other was more or equally objectionable because it limited the right of the officer to arrest for drunkenness to cases where the offender was so drunk as to be annoying to others and without sufficient prudence and discretion to conduct himself properly. This would require the officer to first make an investigation as to the degree of the intoxication and section 394 of the Criminal Code makes it the duty of an officer to arrest any drunken person who is at large and not in the care of some discreet person and upon this point the jury had already been properly instructed.

Upon the former trial of the case one George Crossland had testified materially for the defendant. When introduced by the defendant upon the last trial he stated that he knew nothing about the killing and that his former testimony was not true. It further appeared that he had been threatened the night before with hanging by some unknown parties if he again gave the same testimony. Neither the defendant nor his counsel had any notice or knowledge, so far as is shown by the record before he was introduced, that he would not testify as formerly, but upon the other hand the counsel for the state had no knowledge of it, and had in no way misled or entrapped the defendant or his counsel.

It appeared that the counsel of the defendant had knowledge before the witness was introduced that he had been threatened the night previous in case he testified as before, and this was perhaps sufficient to have put them upon their guard and to have prompted an interview with him. It has been suggested in argument, but this does not appear from the record, that this had been forbidden by the court by his having been sworn and charged as a witness; but even if this were so no suggestion or motion to the court that it was desired, came from the defendant. Neither was there any motion to exclude the witness' statement from the jury or any showing whatever that his former testimony could be supplied. It

was unlike the case of a witness taken suddenly ill. In such a case the trial would be postponed, or the jury discharged and the case continued, because the testimony could probably be thereafter obtained. In this case, however, if the defendant was prejudiced by the witness' statement he should have asked to have it excluded from the jury; and in the absence of a showing that the testimony given by the witness upon the former trial could be supplied, the motion to discharge the jury and continue the case was properly overruled.

Judgment *affirmed*.

*Duvall, Darby & Lowry, for appellants.*

*P. W. Hardin, for appellees.*

[Cited, *Moody v. Commonwealth,* 19 Ky. L. 1119, 43 S. W. 209.]